# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

IN RE THE EXTRADITION OF RAUL MEJIA VAZQUEZ

aka Raul Mejia Vazquez,

Fugitive.

CASE No. 11- MC-00003 BAM

**CERTIFICATION OF EXTRADITABILITY AND ORDER OF COMMITMENT**

This is an extradition proceeding pursuant to 18 U.S.C. §3184. The Government of Mexico ("Mexico") has requested the United States Government extradite Raul Mejia Vazquez ("Mejia Vazquez"), a fugitive from Mexico's justice for the crime of aggravated homicide. The extradition request is based upon a 1978 Treaty between the United States and Mexico, which was signed at Mexico City on May 4, 1978, and entered into force on January 25, 1980 ("Treaty).

**INTRODUCTION**

On January 28, 2011, a complaint for provisional arrest of Mejia Vazquez was filed by the United States Government. (Doc. 1.) Acting on the complaint, this Court issued a warrant on January 28, 2011 for the provisional arrest of Mejia Vazquez under 18 U.S.C. §3184. Mejia Vazquez was arrested on the provisional warrant on September 9, 2011. (Doc. 10.) Mejia Vazquez was arraigned and appointed counsel by Magistrate Judge Gary S. Austin on September 13, 2011 and ordered detained.

Extradition proceedings were scheduled by the parties. By stipulation of the parties, the Court set a briefing schedule for filing of briefs in support of and in opposition to extradition. The

Government filed a brief in support of extradition, along with supporting exhibits. (Doc. 15-17.) Mejia Vazquez did not file an opposition brief, which the Court construed as a waiver of the hearing. Based on the non-opposition, the Court took the matter under submission.

Based upon all the filings and evidence presented, the Court finds that Raul Mejia Vazquez is extraditable to Mexico for the offense requested, aggravated homicide, and certifies this finding to Her Excellency Hillary Rodham Clinton, Secretary of State, as required under 18 U.S.C. §3184.

**STANDARD FOR CERTIFICATION OF EXTRADITABILITY**

To obtain a certification of extraditability on behalf of a requesting state, the United States has the burden of demonstrating each of the following elements: (1) the court possesses subject matter jurisdiction to conduct extradition proceedings; (2) the court possesses personal jurisdiction over the person named in the extradition request; (3) a valid extradition treaty exists between the requesting state and the United States, which is, at all relevant times has been, in full force and effect; (4) the person named in the extradition request is charged with having committed a criminal offense within the jurisdiction of the requesting state and the charged offense is extraditable under the relevant extradition treaty (that is, the offense charged falls within the terms of the relevant extradition treaty); (5) there is competent evidence establishing probable cause to believe that the person named in the extradition request committed the charged offense, and (6) the person named in the extradition request is the person arrested and brought before the court. See 18 U.S.C. §§ 3184, 3190; *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008). "Extradition treaties are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial for their alleged offenses." *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14, 57 S.Ct. 100, 81 L.Ed. 5 (1936).

**DISCUSSION AND ANALYSIS**

If the Court determines that all the requisite elements have been met, the findings are incorporated into the certificate of extraditability. The certificate is forwarded to the Department of the State. The Secretary of State makes the final decision on whether to surrender the respondent. 18 U.S.C. § 3186.

**1.    Subject Matter Jurisdiction**

This Court possesses subject matter jurisdiction to conduct extradition proceedings. Pursuant to

18 U.S.C. § 3184 and Eastern District of California Local Rule 302(b)(8), a Magistrate Judge is authorized to conduct an extradition hearing. Thus, this Court has the authority to conduct an extradition hearing.

### 2. Personal Jurisdiction

The Court must have personal jurisdiction over the person sought to be extradited. Here, Mejia Vazquez is in the custody in the Eastern District of California. Therefore, the Court has personal jurisdiction over him.

### 3. Validity of the Treaty between the United States and Mexico

The court may take judicial notice of the existence of a treaty. *Allen v. Markham*, 156 F.2d 653, 663 (9th Cir. 1946), *rev'd in part on other grounds and aff'd in part sub nom.*, *Clark v. Allen*, 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947).

On January 26, 2012, the Government filed under seal a declaration of Alexis R. Blaine, an Attorney Advisor in the Office of the Legal Advisor for the Department of State. Ms. Blaine's declaration certifies that there is a valid extradition treaty in force between the United States and Mexico. (Declaration of Alexis R. Blaine, dated November 28, 2011, filed as Exh. E on January 26, 2012.) A copy of the Treaty is attached to Ms. Blaine's declaration. The evidence establishes the Treaty is in full force and effect and remains so during the entire time from the date of the underlying offense for which extradition is sought, to the date of this order. Accordingly, the Court takes judicial notice that there is an extradition treaty in full force and effect between the United States and Mexico which was signed at Mexico City on May 4, 1978, and entered into force on January 25, 1980.

### 4. Treaty Coverage

On January 28, 2011, the Government filed the extradition request and accompanying documents, including Arrest Warrant and citations to the applicable Mexican penal codes. (Doc. 1.) These documents indicate that Mexico requests the extradition of Mejia Vazquez for the crime of aggravated homicide. This offense is punishable under the laws of both Mexico and the United States with a maximum prison sentence of no less than one (1) year, as established by Article 2, paragraph 3 of the Extradition Treaty between Mexico and the United States of America in relation to item 1 of the Treaty's Appendix. (See Declaration of Alexis R. Blaine, dated November 28, 2011, filed as Exh. E on

January 26, 2012.)

Article 2 of the Treaty provides that extraditable offenses include "wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less that one year." Treaty, Art. 2 attached as Doc. 17, Exh. E. Inasmuch as the crime of aggravated homicide is punishable by a deprivation of liberty, the maximum of which exceeds one (1) year in both countries, the Treaty covers the crime for which Mejia Vazquez is sought to be extradited.

**5.     Probable Cause**

A central function of the magistrate judge in an extradition proceeding is not to determine guilt or innocence, but to determine whether probable cause exists to hold the extraditee for trial in the requesting state. *Escobedo v. U.S.*, 623, F.2d 1098, 1102 n. 5 (5th Cir. 1980). A magistrate's function in making this determination is to ascertain whether there is "any" evidence establishing reasonable or probable cause. *U.S. ex rel Sakaguchi vs. Kaulukukui*, 520 F.2d 726, 730-731 (9th Cir. 1975).

a.     <u>Evidentiary Standards Determining Probable Cause</u>

The admissibility of evidence in extradition matters is controlled by 18 U.S.C. § 3190 and "the general extradition law of the United States and the provisions of the" Extradition Treaty. *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450 (9th Cir.1987); *accord*, *Oen Yin–Choy v. Robinson*, 858 F.2d 1400, 1406 (9th Cir.1988), *cert. denied*, 490 U.S. 1106. "The authentication requirements for documentary evidence are contained in 18 U.S.C. § 3190, which specifies that 'the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that submitted documents are authenticated in the manner required.'" *Barapind v. Enomoto*, 400 F.3d 744, 748 (9th Cir.2005) (en banc) (per curiam). The Extradition Treaty states that the documents "accompany[ing] the request for extradition, shall be received in evidence when: ... b) In the case of a request emanating from the United Mexican States, they are certified by the principle [sic] diplomatic or consular officer of the United States in Mexico." Extradition Treaty, art. 10, § 6.

The Federal Rules of Evidence do not apply. Fed. R. Evid. 1101(d)(3). The standards for determining whether probable cause is established are the same as those set forth in Rule 5.1 of the Federal Rules of Criminal Procedure. *In re Extradition of Neto*, 1999 WL 627426, at *3 (S.D.N.Y. Aug.

17, 1999). Thus, the Government need only present competent legal evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused.

In determining if probable cause exists, the Court can look to the "totality of circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In other words, the Court must simply decide whether the evidence permits a reasonable belief that the person whose extradition is sought committed the crime. *In re Ribaudo*, 2004 WL 213021 at *5 citing *Austin v. Healy*, 5 F. 3d 598, 605 (2nd Cir. 1993), *cert. denied,* 541 U.S. 1165 (1994). This standard looks to whether there is a fair probability of guilt. *Illinois v. Gates*, 462 U.S. at 238. As explained by the Supreme Court in *Illinois v. Gates,* a probable cause or fair probability decision does not trigger an analysis based on finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence. *Illinois v. Gates*, 462 U.S. at 235, 238-239.

Moreover, under 18 U.S.C. § 3190, hearsay is admissible. *Simmons v. Braun*, 627 F.2d 635, 636 (2nd Cir. 1980). The Court may even rely on unsworn statements of absent witnesses. *Id.* Although caution must be exercised when hearsay is derived from unsworn statements *(Extradition of Joseph Ben-Dak*, 2008 WL 1307816 at *4 (S.D.N.Y. April 11, 2008), the Ninth Circuit has held that even police reports which summarize the statements of witnesses are competent evidence. *Zanazanian v. U.S.*, 729 F.2d 624, 627-628 (9th Cir. 1984).

        b.    <u>Evidence Submitted in Support of Extradition</u>

The United States Government submitted the following evidence relative to probable cause:

Exh. C -   Formal Extradition Request and Certificate of the United States Department of State signed by Ambassador Earl Anthony Wayne. Attached to Exh. C are documents described, authenticated, and certified by Mexican Prosecutor Haydee Chavez Sanchez as follows:

Exh. 1  Arrest Warrant issued by the Judicial District of Morelia, Michoacan for Raul Mejia Vazquez for the crime of homicide.

Exh. 2  Articles of Law (Penal Code) establishing homicide as a crime and the Statute of Limitations.

Exh. 3  Certification of the copies of the criminal investigation.

|   |   |   |
|---|---|---|
| 1 | | Exh. 4 Report of removal of body and location of body. |
| 2 | | Exh. 5 Statement of witness Laura Olivia Cruz Medina. |
| 3 | | Exh. 6 Statement of Ratification of Expert opinion regarding removal of the corpse. |
| 4 | | Exh. 7 Autopsy Report. |
| 5 | | Exh. 8 Expert Report regarding Removal of the corpse. |
| 6 | | Exh. 9 Crime scene report. |
| 7 | | Exh.10 Crime scene report regarding disposal of clothes. |
| 8 | | Exh.11 Autopsy photographs. |
| 9 | | Exh.12 Statement of witness Jamie Mejia Mejia under oath. |
| 10 | | Exh.13 Vital Records Statistics of Raul Mejia Vazquez. |
| 11 | | Exh. 14 Photograph of Raul Mejia Vazquez. |
| 12 | Exh. D | Formal Extradition Request in the Spanish language. |
| 13 | Exh. E | Declaration of Alexis Blaine, United States Department of State. |

Alexis Blaine, an attorney-advisor in the Office of the Legal Adviser of the U.S. Department of State, provided a declaration authenticating a copy of the diplomatic note by which the extradition request was made and a copy of the Treaty, stating that the Treaty is in force and the offenses for which extradition is demanded are covered by it, and the documents supporting the extradition request are properly certified by the principal American diplomatic or consular officer in Mexico, in accordance with 18 U.S.C. § 3190, so as to enable them to be received in evidence. Exh. E. The declaration from the State Department with its attachments, including a copy of the diplomatic note from Mexico, a copy of the Treaty, and the certified documents submitted in support of the request are attached as Government Exhibits C, D, E, and 1 to 14.

The Court has reviewed the evidence submitted and receives the documents Exhibits A through E, and 1 to 14 into evidence in this matter. The documents Exhibit A through E, and 1 to 14 comply with the admissibility requirements of 18 U.S.C. § 3190.

        c.      <u>Factual Support for Probable Cause</u>

The Charge alleges that Mejia Vazquez committed aggravated homicide in violation of Article 22 and 35 of the Code of Criminal Procedure for the State of Michoacan, Mexico. A brief summary of

the facts supporting this Charge, as outlined in the Government's Exhibits and in particular Exh. C (and Exh. 1-14 attached to Exh. C), is as follows:

On November 26, 2009, Raul Mejia Vazquez, was in inside his domicile located at calle 6 de diciembre number 278 of Colonia Independencia in Morelia, Michoacan, deprived his brother Alfredo Mejia Vazquez of life by using a knife.

On November 29, 2009, Jaime Mejia Mejia son of Raul Mejia Vazquez, as witness of the facts, stated before authorities of the Office of the Attorney General of Justice in the State of Michoacan that on November 25, 2009, he along with his father Raul Mejia Vazquez picked up his uncle Alfredo Mejia Vazquez from his domicile, which was located in Colonia Mariano Escobedo in Morelia, Michoacan, so that he would accompany them to harvest the corn sown in a plot of land which belonged to Jaime.

The three of them went together to the plot of land, where they stayed for a long time. Later, Raul Mejia Vazquez and his brother Alfredo Mejia Vasquez went to buy some alcoholic beverages and they started drinking.

The Victim and the person sought had apparently a close and friendly relationship, since from the statements in files of the criminal case it emerged that they normally drank together, and once they were drunk, both of them slept at Raul Mejia Vazquez' house.

Jaime added in his statement that when they finished harvesting the corn, the three of them got in his automobile and headed to his uncle Alfredo Mejia Vazquez' house. When they arrived at his house, Alfredo Mejia Vazquez did not want to get out of the vehicle; therefore, Jamie decided to take him to his house, which he shared with the person sought.

Upon arriving to the property, Raul Mejia Vazquez and his brother Alfredo Mejia Vazquez went to the person sought's room, where they kept on drinking.

Jaime stated that approximately at 4 in the morning on Thursday, November 26, 2009, his father Raul Mejia Vazquez knocked at the door of Jamie's room, who in turn asked him what was the matter, and he answered: "get up, let's harvest corn."

Jamie replied to his father that it was too early, that it would be better to sleep a little longer, but Raul Mejia Vazquez insisted, so Jamie decided to go out his room, it was when the person sought took him by the arm and told him "come and see" taking him to his room.

When entering his father's room, Jamie saw his uncle Alfredo Mejia Vazquez laying on his back next to the closet, his neck and chest covered in blood, and he approached to see if he was still breathing but he had no vital signs.

Raul Mejia Vazquez told Jaime to help him to disappear the corpse, Jaime at a lost did not answer anything for some minutes, and his father started yelling at him, telling him: "Do you have the guts to help me? We are Mejia", and that moment Jamie asked him why he had killed him, and Raul Mejia Vazquez replied that when he was sleeping, his brother tried to strangle him, thus, he had only defended himself and stabbed him.

Raul Mejia Vazquez's clothes were covered in blood; he took his clothes off and put them in a black plastic bag which he gave to Jaime, who in turn also put the knife which his father had used to deprive his uncle of life in the bag.

Jaime added in his statement that he left his house with the black bag containing the blood stained clothes and the knife that Raul Mejia Vazquez had used, walked two or three blocks to

the place where there is a raw sewage channel and threw the bag in it.

When they returned to their domicile, Jaime and his father Raul Mejia Vazquez decided to wrap the corpse in a blanket, cleaned the blood of the room with some cloths that were in the room; later, they took the body downstairs and took it into the trunk of Raul Mejia Vazquez's car.

They got in the car and looked for a proper place to throw Alfredo Mejia Vazquez' corpse, when they made sure nobody was watching, they took down the corpse of the vehicle and threw it in an alley near road "Concepcion" of the State of Michoacan.

When they returned to their domicile, Raul Mejia Vazquez went to his room and approximately at 12:00 hours, he left for work. The following day, Jaime asked his father what he was going to do, and he only replied "nothing happens, do not make a mountain out of a molehill."

On the other hand, there is the statement of Laura Olivia Cruz Medina, rendered on November 29, 2009, before the Public Prosecutor of the Office of the Attorney General of Justice of the State of Michoacan. Said person is Jaime's wife and, amongst other things, she stated that on November 26, 2009, her spouse had told her crying that his father Raul Mejia Vazquez had deprived his uncle Alfredo Mejia Vazquez of life.

The autopsy report of the victim concluded that he died as a result of hypovolemic shock due to a profuse hemorrhage caused by laceration of the neck vessels and laceration of the heart and left lung.

This Court has carefully reviewed and considered the Exhibits submitted by the Government and finds there is probable cause that Raul Mejia Vazquez committed the crime of homicide. The evidence includes sworn statements of witnesses that Raul Mejia Vazquez and Alfredo Mejia Vazquez were brothers, were in the same domicile and were drinking together, Alfredo Mejia Vazquez was found dead with blood all over him in Raul Mejia Vazquez's room, and Raul Mejia Vazquez had blood over him and admitted killing Alfredo Mejia Vazquez. Jamie Mejia Mejia gave an official statement to the Public Prosecutor shortly after he helped his father dispose of the body. Therefore, the Court finds that there is probable cause to believe Raul Mejia Vazquez committed the offense for which extradition is sought.

**6.     Identity of Raul Mejia Vazquez**

The complaint and the extradition packet are competent evidence upon which Raul Mejia Vazquez' identity may be established. *See*, *e.g.*, *Glucksman v. Henkel*, 221 U.S. 508, 513, 31 S.Ct. 704 (1911) (finding that photographs of the fugitive provided by the requesting state may be used to make an identity determination in international extradition matters). "Whether the person before the court is the accused is part of the magistrate judge's probable cause analysis." *Manta v. Chertoff*, 518 F.3d 1134, 1140, 1143 (9th Cir.2008). There must be "competent proof" of identity. *Id.* "[T]he credibility of the

reported identification is a matter committed to the magistrate [judge]." *Id.* at 1145 (citation omitted). There is no per se rule that specifies which identification procedures are competent for probable cause purposes. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir.1986), *cert. denied.* 469 U.S. 882 (1986). "An identification based on a single photograph may be competent evidence of identity in an extradition proceeding." *Manta*, 518 F.3d at 1145 (citation omitted).

Mejia Vazquez has not contested his identity as the person accused of the crime for which extradition is sought. Nonetheless, the Court has carefully reviewed the physical descriptions and photograph of Raul Mejia Vazquez submitted, which is a photograph identified by witnesses set forth in this factual summary as being Raul Mejia Vasquez and considered the documents on file in this matter and the lack of opposition as to the identity by the defendant. The Court concludes that the individual being sought for prosecution pursuant to the Request for Extradition, is indeed, the person in custody. Therefore, there is probable cause to believe that the person appearing before this Court is the person named in the extradition request and accompanying documents. The Court accordingly finds that the Raul Mejia Vazquez named in the request for extradition and the person before this Court on the Complaint for Provisional Arrest with a View Towards Extradition are one and the same person.

**7.  Waiver of Extradition Hearing**

The statutory provision provides for an expedition hearing. 28 U.S.C. §3184.

> "If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

The conduct of an extradition hearing is limited. An extradition hearing involves a preliminary examination of the evidence and is not a trial. *Matter of Extradition of Powell*, 4 F. Supp. 2d 945 (S.D. Cal. 1998). Extradition treaties do not contemplate the introduction of testimony of live witnesses by the respondent to contradict the demanding country's proof. *Bingham v. Bradley*, 241 U.S. 511, 517, 36 S.Ct. 634 (1916). "[A] defendant has no right to cross-examine witnesses or introduce evidence to rebut that of the prosecutor" in extradition proceedings. *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407

(9th Cir.1988). For instance, in *Barapind v. Enomoto*, 400 F.3d 744, 749-50 (9th. Cir 2005), in an *en banc* decision, the Ninth Circuit first noted that evidence which explains away or completely obliterates probable cause is the only defense evidence admissible at an extradition hearing, whereas defense evidence that merely controverts the existence of probable cause, or raises a defense, is inadmissible. The presiding judge is not required to make a determination of guilt or innocence. See Extradition Treaty, U.S.-Mex., art. 3, May 4, 1978.

Here, the Court finds that Mejia Vazquez waived attendance at an extradition hearing. In this matter, the Court set a briefing scheduling on December 22, 2011 pursuant to the parties' stipulation. Mejia Vazquez did not file an opposition, which the Court construed as waiver of defendant's Due Process rights to the extradition hearing. The Court then took the extradition under submission. See *Sayne v. Shipley*, 418 F.2d 679 (5th Cir. (Canal Zone) 1969), *cert. denied*, 90 S.Ct. 1688, 398 U.S. 903 (Due process does not require a hearing before a judicial office to contest extradition if extradition is subject to judicial review). Mejia Vazquez did not submit any arguments or opposition to extradition. Further, the Court finds that Mejia Vazquez has not suffered prejudice from waiver of the extradition hearing. The Court did not preclude opposition papers. Further, the Court fully considered any and all documents filed related to this extradition matter. Given the limited proceedings at the extradition hearing, the Court finds that Mejia Vazquez waived attendance at an extradition hearing.

## FINDINGS AND CERTIFICATION OF EXTRADITABILITY

For the reasons discussed above, the Court grants Mexico's request for the extradition of Raul Mejia Vazquez and makes the following findings and conclusions in support of this Certification:

1. This Court has jurisdiction over the proceedings;
2. This Court has jurisdiction over Raul Mejia Vazquez;
3. There is a valid extradition treaty between the United States and the Government of Mexico, and the treaty is in full force and effect;
4. The offense of Aggravated Homicide is an extraditable offense consisting of conduct considered to be criminal in both the United States and Mexico, and which is punishable by deprivation of liberty for a period of more than one year;
5. There is probable cause to believe that Raul Mejia Vazquez committed the crime of

|   |   |   |
|---|---|---|
| 1 |   | Aggravated Homicide against Alfredo Mejia Vazquez; |
| 2 | 6. | The person Raul Mejia Vazquez named in the request for extradition and the person before this Court on the Complaint for Provisional Arrest with a View Towards Extradition are one and the same person; |
| 5 | 7. | Mexico's formal papers and documents in support of its request for Raul Mejia Vazquez' extradition are and have been presented in accordance with the laws of the United States of America and the Treaty, and have been translated and authenticated in the manner required by the Treaty; and |
| 9 | 8. | Raul Mejia Vazquez waived the extradition hearing. |

The Court HEREBY CERTIFIES the above findings to the Secretary of State, pursuant to 18 U.S.C. § 3184.

IT IS HEREBY ORDERED, that a certified copy of this Certification of Extraditability be delivered by the Clerk to the Assistant United States Attorney assigned to this case for transmission to the Secretary of State.

IT IS FURTHER ORDERED that Raul Mejia Vazquez be committed to the custody of the United States Marshal for this District pending final disposition of this matter by the Secretary of State and surrender to designated agents of the Government of Mexico, at which time the extraditee Raul Mejia Vazquez will be transferred to the agents of the requesting state for return to Mexico.

IT IS SO ORDERED.

Dated: **March 9, 2012**         **/s/ Barbara A. McAuliffe**
                                  UNITED STATES MAGISTRATE JUDGE